# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 28, 2020

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

160034

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v                                                    SC: 160034
                                                     COA: 345268
                                                     Saginaw CC: 84-000570-FC
ROBIN RICK MANNING,
        Defendant-Appellant.

_____/

On November 12, 2020, the Court heard oral argument on the application for leave to appeal the February 21, 2019 order of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

MARKMAN, J. (*concurring*).

I concur in this Court's decision to deny on the basis of MCR 6.508(D), rather than MCR 6.502(G). For the reasons set forth by Justice CLEMENT in her concurring statement, I agree that defendant may file his successive motion for relief from judgment under MCR 6.502(G)(2) because it is "based on a retroactive change in law that occurred after [defendant's] first motion for relief from judgment." However, defendant has not satisfied the "actual prejudice" requirement of MCR 6.508(D)(3)(b) because his sentence is not "invalid," MCR 6.508(D)(3)(b)(iv). Defendant argues that his sentence is "invalid" because it violates both the Eighth Amendment of the federal Constitution and Const 1963, art 1, § 16. I respectfully disagree.

In *Miller v Alabama*, 567 US 460, 465 (2012), the United States Supreme Court held that "mandatory life without parole for those *under the age of 18* at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " (Emphasis added.) Defendant here was not "under the age of 18 at the time of [his] crime[]," and therefore, he is not entitled to relief under *Miller*. Defendant argues that drawing the line at 18 is "arbitrary." However, in *Roper v Simmons*, 543 US 551, 574 (2005), the Court responded to a similar argument:

> Drawing the line at 18 years of age [concerning eligibility for capital punishment] is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18

have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

In *Miller*, the Court concluded that the age of 18 is also the line for mandatory life-without-parole sentences. Because defendant was 18 when he committed murder, imposing the mandatory life-without-parole sentence on him does not violate the Eighth Amendment.

Furthermore, I agree with Justice Scalia's opinion in *Harmelin v Michigan*, 501 US 957, 965, 976 (1991) (opinion by Scalia, J.), that "the Eighth Amendment contains no proportionality guarantee"; instead, "the Clause disables the Legislature from authorizing particular forms or 'modes' of punishment—specifically, cruel methods of punishment that are not regularly or customarily employed." I also agree with the dissenting justices in *Miller* that "[n]either the text of the Constitution nor our precedent prohibits legislatures from requiring that juvenile murderers be sentenced to life without parole." *Miller*, 567 US at 502 (Roberts, C.J., dissenting). See also *id*. at 504, 509 (Thomas, J., dissenting) (The Eighth Amendment "leaves the unavoidably moral question of who 'deserves' a particular nonprohibited method of punishment to the judgment of the legislatures that authorize the punishment," but "[t]oday's decision invalidates a constitutionally permissible sentencing system based on nothing more than the Court's belief that its own sense of morality preempts that of the people and their representatives") (quotation marks, citations, and ellipsis omitted); *id*. at 515 (Alito, J., dissenting) ("When a legislature prescribes that a category of killers must be sentenced to life imprisonment, the legislature, which presumably reflects the views of the electorate, is taking the position that the risk that these offenders will kill again outweighs any countervailing consideration, including reduced culpability due to immaturity or the possibility of rehabilitation. When the majority of this Court countermands that democratic decision, what the majority is saying is that members of society must be exposed to the risk that these convicted murderers, if released from custody, will murder again.").

While I would follow the Supreme Court's decision in *Miller* in an altogether faithful manner, as I must, I would not *extend* its applicability. For no such extension is warranted under *Miller*, our federal or state Constitutions, or the statutes of this state.

Defendant's mandatory life-without-parole sentence also does not violate Const 1963, art 1, § 16, which prohibits "cruel or unusual punishment." As I asserted in *People v Correa*, 488 Mich 989, 992 (2010) (Markman, J., concurring), I believe that *People v Morris*, 80 Mich 634 (1890), correctly held that proportionality review is not a component of Michigan's "cruel or unusual" punishment clause, and *People v Bullock*,

440 Mich 15 (1992), incorrectly held to the contrary. As *Morris* explained, the cruel-or-unusual-punishment clause only prohibits certain modes or methods of punishment and because "[i]mprisonment . . . is, and always has been, in this country and in all civilized countries, one of the methods of punishment," it does not violate the cruel-or-unusual-punishment clause. *Id.* at 639. See also *Bullock*, 440 Mich at 48 (Riley, J., concurring in part and dissenting in part) ("[T]he 'cruel or unusual punishment' clause was intended to prohibit inhumane and barbarous treatment of the criminally convicted, and does not have a proportionality component.").

Furthermore, even under *Bullock*'s four-part test, I do not believe that defendant is entitled to relief. Indeed, I am unable to identify any precedent of this Court in which *Bullock* has ever been applied to strike down or modify a criminal statute of this state, other than in *Bullock* itself. *Bullock*'s test for proportionality assesses: (1) the severity of the sentence imposed compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed on other offenders in the same jurisdiction, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the penological goal of rehabilitation. *People v Carp*, 496 Mich 440, 520 (2014), citing *Bullock*, 440 Mich at 33-34.

With regard to the first factor, as *Carp* explained:

[F]irst-degree murder is almost certainly the gravest and most serious offense that an individual can commit under the laws of Michigan—the premeditated taking of an innocent human life. It is, therefore, unsurprising that the people of this state, through the Legislature, would have chosen to impose the most severe punishment authorized by the laws of Michigan for this offense. [*Carp*, 496 Mich at 514-515.]

With regard to the second factor, all adults and some juveniles who commit first-degree murder face the same sentence of life without parole. Furthermore, nonhomicide offenses exist in Michigan that are less grave or serious than first-degree murder, but for which adult offenders will face mandatory life-without-parole sentences, such as first-degree criminal sexual conduct.

With regard to the third factor, since *Miller*, 23 states have banned life-without-parole sentences on juvenile offenders. However, that means that life-without-parole sentences are still being imposed on juvenile offenders in a majority of the states. And I am not aware of any state that has banned the imposition of life-without-parole sentences on 18-year-olds. Indeed, 19 states and the federal government still impose mandatory sentences of life without parole for first-degree murder on those 18 years of age and older. Six more states impose mandatory life-without-parole sentences in the face of aggravating circumstances. Therefore, Michigan is by no means an outlier, even to the

extent that there is some necessity to ensure that our criminal sanctions are in accordance with those of other states.

With regard to the <u>fourth</u> factor, a life-without-parole sentence for an 18-year-old may not serve the penological goal of rehabilitation, but it may serve other critical penological goals, such as securing a just and proper punishment as determined by a self-governing people and their representatives; the general deterrence of other potential criminal offenders; and the individual deterrence, and incapacitation, of the individual offender himself. In *Carp*, this Court concluded that "with only one of the four factors supporting the conclusion that life-without-parole sentences are disproportionate when imposed on juvenile homicide offenders, defendants have failed to meet their burden of demonstrating that it is facially unconstitutional under Article 1, § 16 to impose that sentence on a juvenile homicide offender." *Id*. at 521. Similarly, the defendant here has failed to meet his burden of demonstrating that it is unconstitutional under Article 1, § 16 to mandatorily impose that sentence upon an 18-year-old homicide offender.

For these reasons, defendant's sentence is not invalid and therefore defendant is not entitled to relief under MCR 6.508(D)(3)(b).

ZAHRA, J., joins the statement of MARKMAN, J.

CLEMENT, J. (*concurring*).

I concur with the Court's denial of defendant's application for failure to show entitlement to relief under MCR 6.508(D). But I write separately to explain why I believe the Court of Appeals erred by dismissing defendant's delayed application under MCR 6.502(G).

When interpreting a court rule, we apply the rules of statutory interpretation. *CAM Constr v Lake Edgewood Condominium Ass'n,* 465 Mich 549, 553 (2002). Just as in statutory interpretation, our goal is to give effect to the intent of the authors. *Wilcoxon v Wayne Co Neighborhood Legal Servs*, 252 Mich App 549, 553 (2002). We begin with the language of the rule. *Id*. If the language is clear and unambiguous, then no further interpretation is allowed. *CAM Constr*, 565 Mich at 554.

Defendant, Robin Manning, argues that the Eighth Amendment of the United States Constitution and Const 1963, art 1, § 16, forbid sentencing 18-year-olds to mandatory life imprisonment without the possibility of parole.[1] In other words,

---

[1] The Eighth Amendment, of course, forbids the infliction of "cruel and unusual punishment." US Const, Am VIII. Our state Constitution forbids the infliction of "cruel or unusual punishment." Const 1963, art 1, § 16.

defendant contends that this Court should extend the holding of *Miller v Alabama*, 567 US 460 (2012), which prohibited mandatory life-without-parole sentences for defendants who were under 18 years old at the commission of their crimes, *id*. at 465, to defendants who were 18 years old at the commission of their crimes. His argument is presented in the form of a collateral attack on his conviction under MCR 6.500—his seventh motion for relief from judgment since he was convicted. Ordinarily, a defendant may file only one such motion and may not appeal the denial or rejection of successive motions, although there are exceptions to those general rules. See MCR 6.502(G)(1) through (3). Accordingly, the Court of Appeals did not consider the merits of defendant's argument, instead dismissing defendant's application because he failed to show that one of the exceptions to the general bar against successive motions under MCR 6.502(G) applied to his claim.

The most relevant exception is that a defendant may file a successive motion if it is "based on a retroactive change in law that occurred after the first motion for relief from judgment . . . ." MCR 6.502(G)(2).[2] There is clearly a retroactive change in law here. *Montgomery v Louisiana*, 577 US ___; 136 S Ct 718 (2016), held that *Miller* announced a new rule that applies retroactively. *Id*. at ___; 136 S Ct at 732 ("*Miller* announced a

---

[2] In his application to the Court of Appeals, rather than arguing that his claim was based on a retroactive change in law, defendant contended that new studies showing that the brain is still developing when a person is 18 years old and older qualified as "new evidence." Defendant therefore argued that his successive motion fit another exception in MCR 6.502(G)(2), which allows a defendant to file a successive motion if it presents "a claim of new evidence that was not discovered before the first [motion for relief from judgment]." It was in his application to our Court that defendant argued that his claim was based on a retroactive change in law.

Even if the issue of whether defendant's successive motion was encompassed by the "retroactive change in law" exception was unpreserved in the Court of Appeals, that court certainly could consider it because it is an issue of law for which all the relevant facts were presented. *People v Giovannini*, 271 Mich App 409, 414-415 (2006) ("[T]his Court may consider an unpreserved issue 'if the question is one of law and all the facts necessary for its resolution have been presented or where necessary for a proper determination of the case.' "), quoting *Providence Hosp v Nat'l Labor Union Health & Welfare Fund*, 162 Mich App 191, 194-195 (1987). Indeed, the trial court had considered both the "new evidence" and the "retroactive change in law" exceptions in MCR 6.502(G)(2). And the Court of Appeals did just that in its order as well by stating that "[d]efendant has failed to demonstrate the entitlement to an application *of any of the exceptions* to the general rule that a movant may not appeal the denial of a successive motion for relief from judgment. MCR 6.502(G)." *People v Manning*, unpublished order of the Court of Appeals, entered February 21, 2019 (Docket No. 345268) (emphasis added).

substantive rule that is retroactive in cases on collateral review."). Therefore, the only question remaining is whether defendant's argument that *Miller*'s holding should be extended to include 18-year-olds is "based on" *Miller*'s retroactive change in law.

I believe that it is. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines the verb "base" as: "1 : to make, form, or serve as a base for  2 : to find a base or basis for—usu[ally] used with *on* or *upon*."[3]  *Black's Law Dictionary* (11th ed) similarly defines "base," in relevant part, as:

> 1. To make, form, or serve as a foundation for <the left hand based her chin>.  2. To establish (an agreement, conclusion, etc.); to place on a foundation; to ground <the claim is based in tort>.  3. To use (something) as the thing from which something else is developed <their company is based on an abiding respect for the employees>.[4]

Thus, the retroactive change in law must only "serve as a foundation for" or "base for" a defendant's claim in order to satisfy MCR 6.502(G)(2).  This standard is satisfied here—*Miller* forms the foundation of defendant's claim that *Miller*'s holding should be extended to 18-year-olds.  While defendant argues that *Miller*'s holding should be extended to another class of defendants rather than simply arguing that he merits relief under the holding, *Miller*'s holding is still the change in law "from which [defendant's claim] is developed."  Defendant's claim is therefore "based on" *Miller*'s holding, which is a retroactive change of law.

Reading MCR 6.502(G)(2) otherwise, as demanding that defendants show that their claims fall squarely within a retroactive change in law, would, as a practical matter, very often (if not always) merge the initial procedural hurdle in MCR 6.502(G)(2) with the merits analysis in MCR 6.508(D).[5]  Defendants would be able to satisfy the initial

---

[3] See also Dictionary.com <https://www.dictionary.com/browse/base> (accessed December 10, 2020) [https://perma.cc/X2YZ-QBEP] (defining the verb "base" as "to make or form a base or foundation for," "to establish, as a fact or conclusion (usually followed by *on* or *upon*)").

[4] This Court turns to lay dictionaries to define a common word or phrase and to law dictionaries to define a legal term of art.  However, because the definitions of "base" "are the same in both a lay dictionary and legal dictionary, it is unnecessary to determine whether the phrase is a term of art, and it does not matter to which type of dictionary this Court resorts."  *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 621-622 n 62 (2016).

[5] MCR 6.508(D) sets forth what a defendant must show in order to prove entitlement to relief.  For example, relevant to the instant case, a defendant who "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under [MCR 6.508]," must show "(a) good

procedural hurdle of MCR 6.502(G)(2) only when they would also prevail on the merits analysis of MCR 6.508(D).  For example, in this case, a narrow interpretation of "based on" would lead to the conclusion that defendant's argument that *Miller* should be extended fails to satisfy MCR 6.502(G)(2).  To satisfy MCR 6.502(G)(2) under such a reading, defendant here would have had to have been a minor at the commission of his crime, such that *Miller* clearly provides him with relief.  He would then necessarily have been able to show entitlement to relief under MCR 6.508(D)—he would have been able to demonstrate good cause because the change in law occurred after his first motion for relief from judgment, MCR 6.508(D)(3)(a), and he would have been able to show actual prejudice because his sentence would have been invalid, MCR 6.508(D)(3)(b)(iv).  In such a scenario, MCR 6.502(G) and MCR 6.508(D) would no longer do separate work.  Because one of the provisions would be rendered nugatory under this interpretation, I would avoid reading "based on" in MCR 6.502(G) as a high bar, as the Court of Appeals appears to have done.  *Apsey v Mem Hosp*, 477 Mich 120, 127 (2007) ("[N]o word should be treated as surplusage or made nugatory.").

For these reasons I believe the Court of Appeals erred by dismissing defendant's application under MCR 6.502(G).  Though I concur in this Court's denial of defendant's application because I believe defendant's claim fails on the merits under MCR 6.508(D), I believe defendant satisfied MCR 6.502(G)(2) by filing a successive motion for relief from judgment that was "based on a retroactive change in law . . . ."  MCR 6.502(G)(2).

MARKMAN and ZAHRA, JJ., join the statement of CLEMENT, J.

MCCORMACK, C.J. (*dissenting*).

I respectfully dissent from the Court's order denying leave to appeal.[6]  The trial

---

cause for failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularities that support the claim for relief."  MCR 6.508(D)(3).  Here, because defendant challenges his sentence, he would need to show actual prejudice by demonstrating that his sentence is invalid.  MCR 6.508(D)(3)(b)(iv).

[6] But to the extent the Court denies leave to appeal under MCR 6.508(D) rather than MCR 6.502(G), I agree that the former is the correct rule for the reasons eloquently explained in Justice CLEMENT's concurring statement.  See also *People v Stovall*, ___ Mich App ___ (November 5, 2020) (Docket No. 342440), slip op at 3 (concluding that the defendant's challenge to his sentence of life in prison *with* the possibility of parole based on *Miller* and *Montgomery* satisfied the "retroactive change in law" procedural requirement in MCR 6.502(G)).

court relied at least in part on MCR 6.502(G) in denying the defendant's motion; as the Court's order today makes clear, this was error. I would not summarily conclude that the defendant cannot show the good cause and actual prejudice necessary to satisfy MCR 6.508(D)(3).

Rather, I would vacate the trial court's order denying relief and remand to that court for reconsideration under MCR 6.508(D). And I would direct the trial court on remand to hold an evidentiary hearing to allow the defendant and the prosecution to present evidence about whether the rule from *Miller v Alabama*, 567 US 460 (2012) and *Montgomery v Louisiana*, 577 US ___; 136 S Ct 718 (2016), should be extended to the defendant. MCR 6.508(C). The defendant and amici make a compelling argument that the advances in studies of brain development since *Roper v Simmons*, 543 US 551 (2005), on which *Miller* was based, demonstrate that the "distinctive attributes of youth" that formed the basis for the *Miller* decision continue beyond age 18. But because the trial court denied relief here without a hearing, we lack a factual record to review to determine whether this case warrants extending the rule from *Miller*.

BERNSTEIN and CAVANAGH, JJ., join the statement of MCCORMACK, C.J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 28, 2020



Clerk

t1222